ROBERT E. DOWLING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11449.   Promulgated October 10, 1927.

*Edward F. Clark, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

LITTLETON: The Commissioner determined deficiencies in the amounts of $13,403.50 and $19,588.34 for the calendar years 1920 and 1921, respectively. The deficiency for 1920 is not in controversy and the amount thereof was paid prior to the hearing of this proceeding. The petitioner claims that $16,282.32 of the deficiency determined for the calendar year 1921 is erroneous for the reason that the Commissioner, in determining the loss sustained in that year, should have used the March 1, 1913, value for 600 shares of stock of the Guardian Trust Co. owned by petitioner of $125 a share instead of $80 a share.

### FINDINGS OF FACT.

Petitioner is a resident and citizen of New York, N. Y. In 1910 he purchased 600 shares of the capital stock of the Guardian Trust Co. of New York for which he paid $175 a share cash and from that date he continued to be, and was on March 1, 1913, and in the year 1921, the owner of said 600 shares.

The Guardian Trust Co. was organized several years prior to 1910 under the laws of the State of New York and had capital stock of $500,000 divided into 5,000 shares of the par value of $100 each. This company had been for several years and was on March 1, 1913, a going concern engaged in the banking and trust company business and was subject to the strict supervision of the State Superintendent of Banks and the State Banking Department of the State of New York. The stock of the Guardian Trust Co. was closely held, practically all of it being owned by seven individuals who would not sell their stock. The stock of the Guardian Trust Co. was not listed on any exchange and there were very few sales of any shares of this stock within a year prior to March 5, 1913, when the Guardian Trust Co. sold its assets to the Empire Trust Co. as hereinafter more particularly set forth.

The only dealings in the stock of the Guardian Trust Co. were what is known as " over the counter " and it was rarely dealt in in that manner. The stock was occasionally quoted in the Commercial and Financial Chronicle in 1912 and 1913, but such quotations usually showed either a bid and no ask price or an ask and no bid. Whenever a bid and an ask price were given on a particular date the difference between the two varied from 20 to 30 points. These quotations were not based upon and did not represent actual sales of the stock. There was on March 1, 1913, no established market price for the stock.

The value of the assets of the Guardian Trust Co. on March 1, 1913, exceeded $3,300,000 and the liabilities to depositors were in such amount that there was left an excess of assets over liabilities for deposits and all other liabilities were over $960,000. Five hundred thousand dollars of the excess of the assets over liabilities represented capital and the remainder represented surplus and undivided profits.

On March 5, 1913, there was authorized by the stockholders, and thereupon completed, a transfer of the assets of the Guardian Trust Co. to the Empire Trust Co. of New York, under the terms of which sale or transfer the Empire Trust Co., as purchaser, assumed complete liability for the full amount of deposit liabilities of the Guardian Trust Co., and, in addition thereto, agreed to and did at once pay to each stockholder of the Guardian Trust Co. the amount of $50 a share upon the stock. The plan of sale to and purchase by the Empire Trust Co. provided that the stockholders of the Guardian Trust Co. should ultimately receive in addition to the $50 a share paid to them at the time of transfer, all further realization upon the assets after deducting the expenses of liquidation.

One of the stockholders of the Guardian Trust Co. owning 220 shares of its stock objected to the sale and transfer of the assets to the Empire Trust Co. but the sale and transfer was duly carried over

his protest and the transfer became in all respects completed and fulfilled. Thereafter, pursuant to section 17 of the New York Stock Corporation Law, this stockholder instituted a proceeding in the Supreme Court of New York County by petition verified April 24, 1913, for the appraisal of the value of his 220 shares of stock as of March 5, 1913, the date of the sale and transfer, which resulted in an order of the said court dated December 11, 1913, fixing the value of his stock on March 5, 1913, at $150 a share. Although no appraisers were actually appointed by the court and the said order was a consent order based upon a stipulation filed by the attorneys for the parties to the litigation, it was entered into at a time when the interests of the stockholders of the Guardian Trust Co., as well as the stockholders of the Empire Trust Co., demanded that the lowest possible value be placed upon said stock, and at a time when no interest of the stockholders would be served by a compromise of the litigation, unless such compromise should result in a lower value being placed upon the stock than would likely be placed upon it by appraisers.

Between March 1, 1913, and 1921 business conditions materially changed and the full value of the assets of the Guardian Trust Co. on March 1, 1913, was not realized during the period of liquidation, March 5, 1913, to and including 1921. Although there was no loss upon liquidation to the stockholders, the stock of the Guardian Trust Co. became of no value in 1921 when liquidation was completed.

In his income-tax return for the year 1921, petitioner deducted as a loss the amount of $75 a share, being the difference between $50 received on March 5, 1913, and the March 1, 1913, value of $125 a share for the stock.

The Commissioner based his determination of the value of petitioner's 600 shares of stock upon quotations appearing in the Commercial and Financial Chronicle on or about March 1, 1913, and advised petitioner that " No change has been made in the computation of the loss on 600 shares of stock of the Guardian Trust Co. as shown by the Revenue Agent. The loss of $18,000 has been computed and allowed by the agent based on the March 1, 1913, value of $80 a share, as shown by the Commercial and Financial Chronicle, which is considered by this office as the best evidence of the value of the stock at that date."

The fair market value of the 600 shares of capital stock of the Guardian Trust Co. acquired by petitioner in 1910 was $125 a share on March 1, 1913.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by SMITH and LOVE.